**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ARTURO E. ACOSTA,

    Plaintiff,

vs.

NAPHCARE, *et al.*,

    Defendants.

Case No. 2:09-cv-1998-RLH-RJJ

**ORDER**

   Plaintiff, an inmate proceeding *pro se*, has submitted an Application to Proceed *in Forma Pauperis* (#1) and a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (#1-2). The Court has screened the complaint and finds that it requires amendment.

   This Court has screened Plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A. Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). Pro se pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir. 1988). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

   In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of

poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id., see Papasan v. Allain*, 478 U.S. 265, 286 (1986).

All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28

(1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**Screening of the Complaint**

Plaintiff claims that he received inadequate medical care by NaphCare, the health care provider at the North Las Vegas Detention Center (NLVDC) and the Clark County Detention Center (CCDC). In Count I, Plaintiff alleges that he injured his right shoulder and hip when he rolled off the top bunk while in custody at the NLVDC. He was given ibuprofen. He states that it took NaphCare 12 days to see him, and he was transferred to CCDC, where he informed them of his injury. In Count II, Plaintiff alleges that the correctional officers at NLVDC never called for medical attention when he advised them of his fall. In Count III, Plaintiff alleges that he received inadequate medical care at CCDC. He claims that he advised them of his fall and injury upon his arrival. Forty-five (45) days later, Plaintiff had two x-rays taken. He was told that the results were normal, but he still experienced pain in his shoulder. Plaintiff alleges that, after twenty (20) months of medical requests and grievances, he was sent to U.M.C. for an evaluation of his shoulder and MRI. He claims he was never told the results of the MRI but that Dr. Hayes told him that there was nothing that he could do for him and he would have to live with the pain. Plaintiff seeks compensatory damages.

    **A.**    **Defendants**

In the caption of his complaint, Plaintiff indicates he is suing NaphCare, NLVDC, and CCDC. In the defendants section of the complaint form, Plaintiff indicates he is suing NaphCare in both individual and official capacities, the Chief of Police for North Las Vegas Detention Center in his official capacity, and Brian Hayes, M.D., Director of NaphCare at Clark County Detention Center in both individual and official capacities.

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]   . . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution. . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

1  The statute plainly requires that there be an actual connection or link between the actions of the
2  defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Department*
3  *of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The Ninth Circuit has
4  held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning
5  of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to
6  perform an act which he is legally required to do that causes the deprivation of which complaint is
7  made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Because Plaintiff has not articulated any
8  actual connection or link between any actions of Defendant Chief of Police, the Chief of Police must be
9  dismissed with leave to amend.
10        To the extent that Plaintiff is attempting to sue the North Las Vegas Detention Center and the
11  Clark County Detention Center, they are inanimate jail buildings that are not "persons" under § 1983
12  and cannot be sued.  If Plaintiff wishes to sue the municipalities that operate those respective detention
13  centers, he must specifically name those municipalities as defendants and go beyond a respondeat
14  superior theory of liability to demonstrate that the alleged constitutional deprivation was the product of
15  a policy or custom of the municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).
16  Therefore, Defendants North Las Vegas Detention Center and the Clark County Detention Center are
17  dismissed with prejudice.
18        In *Kentucky v. Graham*, the Supreme Court clarified the distinction between official and personal
19  capacity suits.  473 U.S. 159, 165 (1984).  The Court explained that while individual capacity suits seek
20  to impose personal liability upon a government official for actions performed under color of state law,
21  official capacity actions generally represent another way "of suing an entity of which an officer is an
22  agent." *Id.* (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)).
23  In order to establish personal liability in a §1983 action, a plaintiff must show that an individual, acting
24  under color of state law, caused a deprivation of a federal right. *Graham*, 473 U.S. at 166.  By contrast,
25  in an official-capacity action, a plaintiff must demonstrate that a policy or custom of an entity
26

contributed to the violation of a federal law. *Id.* That is to say, "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48 (citation omitted). States and state officers sued in their official capacities are not "persons" for purposes of a § 1983 action and may not be sued under the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). On the other hand, § 1983 allows suits against state officers in their individual capacities for acts they took in their official capacities. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Because individuals may not be sued in their official capacities under § 1983 for their actions, and Plaintiff has not alleged a policy or custom contributed to the violations of federal law, Plaintiff's claims against the defendants in their official capacities are dismissed with leave to amend.

**B.     Constitutional Standards**

The Due Process Clause of the Fourteenth Amendment applies to cases concerning conditions of confinement of pretrial detainees, not the Eighth Amendment prohibition against cruel and unusual punishment, which only protects convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Bell*, 441 U.S. at 535; *see also Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40, 674 (1977). The deliberate indifference standard of the Eighth Amendment is applied to sentenced prisoners with serious medical needs in section 1983 cases. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This standard has also

been applied to pre-trial detainees through the Due Process Clause of the Fourteenth Amendment. *Redman v. County of San Diego*, 942 F.2d 1435, 1442-43 (9th Cir. 1991).

> The requirement of conduct that amounts to "deliberate indifference" provides an appropriate balance of the pretrial detainees' right to not be punished with the deference given to prison officials to manage the prisons. This standard also comports with the purpose of the due process clause: to protect against the deliberate, arbitrary choices by government.

*Id*. at 1443.

> The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know [ ] of and disregard [ ] an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)). Where the plaintiff is a pretrial detainee the appropriate analysis of his claims comes under the due process rubric, and the appropriate standard of review under the due process clause is the "deliberate indifference" standard.[1]  The court will construe this claim as a claim that defendants violated his due process rights under the Fourteenth Amendment, as is appropriate for a pretrial detainee.  The deliberate indifference standard requires actual knowledge and subjective intent.

"Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *see also Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995); *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). This rule applies to "physical, dental, and mental health." *See Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). An inmate claiming that jail officials failed to attend to medical needs must establish 1) a serious medical need and 2) deliberate indifference to that need by jail officials. *McGuckin v. Smith*, 974 F.2d 1050, 1050-60 (9th Cir. 1992). A medical need is serious if the failure to treat the inmate's condition could result in further

---

[1] Accordingly, the court will utilize cases construing the Eighth Amendment cruel and unusual punishment clause in analyzing plaintiff's claims. For example, the appropriate standard for evaluating medical claims brought be pretrial detainees is the same one used to evaluate convicted prisoners' claims under the Eighth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (Eighth Amendment guarantees minimum standard of care for pretrial detainees).

significant injury or the "unnecessary and wanton infliction of pain." *Id*. at 1059 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle v. Gamble*, 429 U.S. at 104-05. However, where a prisoner alleges a delay in receiving medical treatment, the prisoner must allege that the delay led to further injury. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.), *cert. denied,* 519 U.S. 1029 (1996); *see also Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992) (stating that prisoner may demonstrate deliberate indifference if prison officials relied on the contrary opinion of a non-treating physician). In addition, a difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. *See Jackson*, 90 F.3d at 332; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Although neither a physician's negligence nor a prisoner's disagreement with a particular course of treatment states a claim for deliberate indifference, a prison medical staff's acts or omissions will constitute deliberate indifference if staff members knew of and disregarded an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. at 837. Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once prescribed." *Estelle v.*

1  *Gamble*, 429 U.S. at 104-05. The Ninth Circuit has found deliberate indifference where prison officials
2  "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the
3  medical needs of the prisoner." *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)(reversing
4  summary judgment where prison officials forced prisoner to endure a plane flight that resulted in ear
5  injury, in direct contravention of a treating physician's previous orders); *Ortiz v. City of Imperial*, 884
6  F.2d 1312, 1314 (9th Cir. 1989)(per curium)(reversing summary judgment where medical staff knew
7  that pretrial detainee had head injury, but prescribed contraindicated medications, disregarding evidence
8  of complications to which they had been specifically alerted by private treating physician); *Tolbert v.*
9  *Eyman*, 434 F.2d 625 (9th Cir. 1970)(finding cognizable claim for deliberate indifference where warden
10 refused to authorize prisoner's receipt of medicine that had been previously prescribed by a physician);
11 *Cf. McGuckin v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992)(where surgery recommended by prisoner's
12 prior physician was severely delayed, court was unable hold doctors liable because prison administrators,
13 not the doctors, were responsible for scheduling treatment).

14     **C.**     **Count I**

15     Plaintiff alleges that he injured his right shoulder and hip when he rolled off the top bunk while
16 in custody at the NLVDC. He was given ibuprofen. He states that it took NaphCare 12 days to see him.
17 The next day he was transferred to CCDC, where he informed them of his injury. Plaintiff states that
18 he had a x-ray taken, which was normal. After 20 months of medical request grievances, he was sent
19 to UMC (University Medical Center) for an expert evaluation for his continuing pain and told by Dr.
20 Hayes at CCDC that nothing else could be done.

21     Plaintiff has not alleged facts to support a claim of deliberate indifference to his serious medical
22 needs because he has not asserted anything more than negligence or disagreement with his diagnosis.
23 Thus, Plaintiff's claim in Count I will be dismissed with leave to amend.

24     **D.**     **Count II**

25     Plaintiff alleges that the corrections officers at NLVDC never called for medical
26

attention/personnel after Plaintiff informed them of his fall. Plaintiff states that he advised several correctional officers about his fall but nothing was done.

Plaintiff has not alleged facts to support a claim of deliberate indifference to his serious medical needs because he has not shown that the officers knew of and disregarded an *excessive* risk to Plaintiff's health. Therefore, Plaintiff's claim in Count I will be dismissed with leave to amend.

**Conclusion**

Plaintiff's complaint is dismissed because Plaintiff fails to state a claim upon which relief may be granted. Plaintiff will be granted leave to amend his complaint if he believes he can correct the deficiencies noted.

Based on the foregoing, and with good cause appearing,

**IT IS HEREBY ORDERED** that the complaint is **DISMISSED** with leave to amend. The amended complaint must be a complete document in and of itself, and will supersede the original complaint in its entirety. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the Court. Plaintiff will have **thirty (30) days** from the date that this Order is entered to file his amended complaint, if he believes he can correct the noted deficiencies. **Failure to comply with this Order will result in the dismissal of this action.**

**IT IS FURTHER ORDERED** that Plaintiff shall clearly title the amended complaint as such by placing the words "FIRST AMENDED" immediately above "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" on page 1 in the caption, and Plaintiff shall place the case number, 2:09-CV-1998-RLH-RJJ, above the words "FIRST AMENDED"in the space for "Case No."

**IT IS FURTHER ORDERED** that the Clerk shall send to Plaintiff two copies of a blank Section 1983 civil rights complaint form with instructions along with one copy of the original complaint.

DATED: September 2, 2010.

_____
UNITED STATES MAGISTRATE JUDGE